UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| PARIS CHANEY, | : | CIVIL ACTION NO. _____ |
| Plaintiff, | : | |
| v. | : | |
| BETTER BUSINESS BUREAU, INC. | : | |
| Defendant. | : | JULY 14, 2015 |

# COMPLAINT

## JURISDICTION AND VENUE

1. This action arises under the Age Discrimination in Employment Act (ADEA) of 1967, 29 U.S.C. §621 *et seq.*, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, *et seq.* ("CFEPA").

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. §1988.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff filed a timely claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

7. Plaintiff filed a timely claim with the Equal Employment Opportunity Commission ("EEOC").

8. The CHRO issued a Release of Jurisdiction to the Plaintiff on April 16, 2015.

9. The EEOC issued a Notice of Right to Sue to the Plaintiff on July 2, 2015.

## THE PARTIES

10. The Plaintiff, Paris Chaney ("Plaintiff"), resides in Wallingford, CT 06492.

11. The Defendant, Better Business Bureau, Inc. ("Defendant" or "BBB") is headquartered at 29 Berlin Road, Cromwell, CT 06416.

## FACTS

12. Plaintiff was born on January 31, 1954[1] and was fifty-seven (57) years at the time of the incidents alleged in her Complaint against the BBB.

13. Plaintiff was hired by the BBB in July 2003, as a Sales Consultant.

14. In 2007, Plaintiff was promoted into the position of Investigator.

15. Plaintiff always received high scores on her performance evaluations.

16. At all times relevant, Ms. Paulette Scarpetti ("Scarpetti"), was the President/CEO at the Connecticut BBB and was Plaintiff's supervisor.

17. Beginning in early 2011, and continuing throughout her employment, the BBB had undergone a scheme or plan by which employees in their 60's and 70's were either

---

[1] Plaintiff is currently 61 years old.

terminated, had their positions eliminated, or resigned under pressure, and were replaced by younger employees.

18. As part of their scheme or plan to eliminate older employees, the BBB began stripping away the job responsibilities of Plaintiff and other older employees and reassigning those responsibilities to younger, less experienced, employees.

19. On at least three (3) separate occasions, Plaintiff's job functions were taken away and given to younger employees.

20. In 2012, Plaintiff was told by Scarpetti, that if she wanted to remain an Investigator (her position at that time), she would no longer be able to work full time and her hours would be reduced to a part-time basis.

21. As a result of the BBB threatening to reduce Plaintiff's hours as an Investigator, toward the end of 2012, the Plaintiff was forced into accepting a new position, in order to remain full time, as Consultant, Complaints & Investigations ("Consultant"), a position that Plaintiff was not hired for and did not desire.

22. As Consultant, Plaintiff was required to conciliate complaints made by consumers against member businesses that the consumer filed complaints against.

23. On numerous occasions, while Plaintiff was handling the consumer's complaints in her new role as Consultant, Plaintiff noticed that many of the complaints against larger member businesses were being closed out in favor of the business, rather than the consumer, even though the information provided by the consumer indicated that it should have been closed in favor of the consumer.

24. Plaintiff reported the BBB's bias in favor of larger member businesses to Carolyn Betts ("Betts"), a co-worker in charge of closing complaints; Courtney Goodwin ("Goodwin"),

the Senior Complaint Consultant; and Joanne Zak ("Zak"), Senior Vice President on multiple occasions.

25. Each time Plaintiff reported the BBB's unethical bias in regard to its favoritism toward larger member businesses, Plaintiff was told to just close out the complaints.

26. On one occasion, Plaintiff contacted the Connecticut Insurance Department ("Insurance Department"), and spoke to Ms. Amy Stegall ("Stegall"), Program Manager, Insurance Fraud & Investigations Unit, to determine the applicable laws pertaining to the handling of a specific complaint she had, of a customer filing a complaint against Travelers Insurance ("Travelers"), one of the BBB's favored larger business members.

27. Plaintiff's telephone call to the Insurance Department was reported by Zak to Scarpetti.

28. Zak, subsequently told Plaintiff, it's none of the BBB's business what Travelers does since the BBB has an "agreement" with Travelers "not to get involved."

29. Scarpetti told Plaintiff not to investigate negative information about any larger accredited businesses, including Travelers, and that Plaintiff was not aware of how much money the BBB received from larger business members.

30. When Plaintiff complained to Scarpetti that this was against the mission of the BBB, Scarpetti, ignoring the mission of the BBB, again directed Plaintiff to close out the complaints against larger accredited businesses, such as Travelers Insurance – i.e., not investigate the complaints any further.

31. On or about February 27, 2013, Denise Nelson ("Nelson"), a younger employee, in her 20's, was promoted by Scarpetti into the position of Director of Investigation & Ad Reviews, a position Plaintiff was more qualified and experienced for, and not given the opportunity to apply to.

32. In addition, while working under Scarpetti, the Plaintiff had also been subjected to derogatory, ageist remarks.

33. Scarpetti, made numerous ageist comments to Plaintiff about her hair being gray, telling Plaintiff that she, "needed a touch-up," obviously suggesting that the Plaintiff should dye her hair darker to appear younger.

34. On another occasion, Scarpetti told Plaintiff she should put on make-up, implying that Plaintiff looked old without make-up.

35. On December, 2013, Scarpetti had a meeting with Plaintiff and gave her an Employee Review, dated December 11, 2013, which stated that her performance had allegedly been below expectations in an attempt to further intimidate and harass Plaintiff.

36. Plaintiff's December 2013 Employee Review permitted her until April 2014 to improve her alleged performance issues.

37. On February 3, 2014, Plaintiff was required to meet with Scarpetti and Zak, Senior Vice President.

38. At the February 3rd meeting, Scarpetti and Zak gave Plaintiff a subsequent written Employee Review which stated that Plaintiff now only had until the end of February 2014 to allegedly improve, completely ignoring Plaintiff's original Employee Review, which permitted Plaintiff until April of 2014 to improve her purported performance issues.

39. On February 20, 2014, as a result of the discriminatory conduct of the BBB, the Plaintiff filed a formal Complaint with the CHRO, alleging age discrimination.

40. Subsequently, on March 7, 2014, Scarpetti; Zak; Goodwin, the Complaint Supervisor; and, Susan Dudley ("Dudley"), Director of Human Resources ("HR"), requested another meeting with the Plaintiff.

41. During the March 7th meeting, Scarpetti told Plaintiff that she was being terminated, directly contradicting the terms of her December 2013 Employee Review, which explicitly stated she had until April 2014 to improve her alleged performance issues.

42. On May 12, 2014, the Appeals Referee found for the State of Connecticut Employment Security Appeals Divisions, determined that the BBB's reason for Plaintiff's termination was pretext and that she was actually terminated for filing her CHRO Complaint.

## COUNT ONE
## VIOLATION OF THE AGE DISCRIMINATION
## IN EMPLOYMENT ACT, 29 U.S.C. §623 (AGE DISCRIMINATION)

43. Plaintiff incorporates Paragraphs 1-42 as though fully set forth herein at length.

44. Plaintiff, age 57, is a member of a protected class.

45. Throughout Plaintiff's employment with the Defendant, Plaintiff always performed her job in a reasonable manner and consistently worked well with her supervisors and co-workers.

46. BBB treated Plaintiff in a disparate manner in the terms and conditions of her employment based on her age, including, but not limited to:

   (a). Taking away her job responsibilities and reassigning her responsibilities to younger employees.

   (b). Threatening to reduce her hours.

   (c). Forcing her to accept a new position, as Consultant.

   (d). Reassigning her job functions and responsibilities to younger, in experienced, part time and full time employees.

    (e). Not giving the Plaintiff an opportunity to apply for the position of Director of Investigation & Ad Reviews, a position Plaintiff was more qualified for and experienced, which was given to Denise Nelson, a younger employee, in her 20's.

    (f). Scarpetti, making numerous ageist comments to Plaintiff about her hair being gray, and telling Plaintiff that she, "needed a touch-up," obviously suggesting that the Plaintiff should dye her hair darker to appear younger.

    (g). On another occasion, Scarpetti told Plaintiff she should put on make-up, implying that Plaintiff looked old without make-up.

    (h). Giving the Plaintiff an Employee Review, which stated that her performance had been below expectations in an attempt to further intimidate and harass Plaintiff.

    (i). On December 11, 2013, BBB informed Plaintiff that she had until April 2014 to improve upon her alleged performance issues.

    (j). On February 3rd 2014, Plaintiff was required to meet with Scarpetti and Zak and was told that she only had until the end of February 2014 to improve her alleged performance issues, completely ignoring the fact that Plaintiff's previous December 2013 Employee Review, permitted her until April of 2014 to allegedly improve.

    (k). On March 7, 2014, Plaintiff was terminated, prior to the expiration of her April 2014 employee review period.

47. The BBB's conduct is in violation of 29 U.S.C. §623, which prohibits employers from discriminating against employees with respect to the compensation, terms, conditions, or privileges of employment on the basis of age.

48. The BBB was aware or should have been aware that its conduct was unlawful.

49. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages that include, but are not limited to: lost or reduced wages, fringe benefits, health insurance benefits, pension payments, loss of social security income and benefits, until the age of retirement; emotional and psychological distress, stress, anxiety; physical injury; and the loss of the ability to enjoy life's pleasures and activities.

50. Plaintiff seeks compensatory and punitive damages as a result of the BBB's unlawful conduct.

## COUNT TWO
## VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, C.G.S. § 46a-60(a)(1) (AGE DISCRIMINATION)

51. Plaintiff incorporates Paragraphs 1-42 and 43-50 as though fully set forth herein at length.

52. Plaintiff, age 57, is a member of a protected class.

53. Throughout Plaintiff's employment with the BBB, Plaintiff always performed her job in a reasonable manner and consistently worked well with her supervisors and co-workers.

54. BBB treated Plaintiff in a disparate manner in the terms and conditions of her employment based on her age, including, but not limited to:

   (a). Taking away her job responsibilities and reassigning her responsibilities to younger employees.

   (b). Threatening to reduce her hours.

   (c). Forcing her to accept a new position, as Consultant.

   (d). Reassigning her job functions and responsibilities to younger, in experienced, part time and full time employees.

   (e). Not giving the Plaintiff an opportunity to apply for the position of Director of Investigation & Ad Reviews, a position Plaintiff was more qualified for and experienced, which was given to Denise Nelson, a younger employee, in her 20's.

   (f). Scarpetti, making numerous ageist comments to Plaintiff about her hair being gray, and telling Plaintiff that she, "needed a touch-up," obviously suggesting that the Plaintiff should dye her hair darker to appear younger.

   (g). On another occasion Scarpetti told Plaintiff she should put on make-up, implying to Plaintiff that she looked old without make-up.

   (h). Giving the Plaintiff an Employee Review, which stated that her performance had been below expectations in an attempt to further intimidate and harass Plaintiff.

   (i). On December 11, 2013, BBB informed Plaintiff that she had until April 2014 to improve upon her alleged performance issues.

   (j). On February 3rd 2014, Plaintiff was required to meet with Scarpetti and Zak and was told that she only had until the end of February 2014 to improve her alleged performance issues, completely ignoring the fact that Plaintiff's previous

      December 2013 Employee Review, permitted her until April of 2014 to allegedly improve.

    (k). On March 7, 2014, Plaintiff was terminated, prior to the expiration of her April 2014 employee review period.

55. The BBB's conduct is in violation of C.G.S. § 46a-60(a)(1), which prohibits employers from discriminating against employees with respect to the compensation, terms, conditions, or privileges of employment on the basis of age.

56. The BBB was aware or should have been aware that its conduct was unlawful.

57. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages that include, but are not limited to: lost or reduced wages, fringe benefits, health insurance benefits, pension payments, loss of social security income and benefits, until the age of retirement; emotional and psychological distress, stress, anxiety; physical injury; and the loss of the ability to enjoy life's pleasures and activities.

58. Plaintiff seeks compensatory and punitive damages as a result of the BBB's unlawful conduct.

## COUNT THREE
## VIOLATION OF THE AGE DISCRIMINATION
## IN EMPLOYMENT ACT, 29 U.S.C. §623 (RETALIATION)

59. The Plaintiff hereby re-alleges and incorporates Paragraphs 1-42, 43-50, and 51-58 as if fully set forth herein.

60. Plaintiff engaged in protected opposition to age discrimination by filing an age discrimination complaint with the CHRO and the EEOC, on February 20, 2014.

61. Subsequent to her engagement in a protected activity, Plaintiff suffered from adverse employment actions, when she was terminated from her employment on March 7, 2014, just weeks after filing her age discrimination complaint with the CHRO.

62. On May 12, 2014, the Appeals Referee found for the State of Connecticut Employment Security Appeals Divisions, determined that the BBB's reason for Plaintiff's termination was pretext and that she was actually terminated for filing her CHRO Complaint.

63. The adverse employment action to which Plaintiff was subjected to was the direct consequence and in retaliation for Plaintiff's opposition to BBB's unlawful age discrimination.

64. The BBB's actions violate the ADEA.

65. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages that include, but are not limited to: lost or reduced wages, fringe benefits, health insurance benefits, pension payments, loss of social security income and benefits, until the age of retirement; emotional and psychological distress, stress, anxiety; physical injury; and the loss of the ability to enjoy life's pleasures and activities.

66. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT FOUR
## VIOLATION OF CONN. GEN. STAT. 46a-60(a)(4) (RETALIATION)

67. The Plaintiff hereby re-alleges and incorporates Paragraphs 1-42, 43-50, 51-58, and 59-66 as if fully set forth herein.

68. Plaintiff engaged in protected opposition to age discrimination by filing an age discrimination complaint with the CHRO and the EEOC, on February 20, 2014.

69. Subsequent to her engagement in a protected activity, Plaintiff suffered from adverse employment actions, when she was terminated from her employment on March 7, 2014, just weeks after filing her age discrimination complaint with the CHRO.

70. On May 12, 2014, the Appeals Referee found for the State of Connecticut Employment Security Appeals Divisions, determined that the BBB's reason for Plaintiff's termination was pretext and that she was actually terminated for filing her CHRO Complaint.

71. The adverse employment action to which Plaintiff was subjected was the direct consequence and in retaliation for Plaintiff's opposition to the BBB's unlawful age discrimination.

72. The BBB's actions violate Conn. Gen. Stat. § 46a-60(a)(4).

73. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages that include, but are not limited to: lost or reduced wages, fringe benefits, health insurance benefits, pension payments, loss of social security income and benefits, until the age of retirement; emotional and psychological distress, stress, anxiety; physical injury; and the loss of the ability to enjoy life's pleasures and activities.

74. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

### COUNT FIVE
### VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, C.G.S. 31-51q

75. Plaintiff realleges and incorporates Paragraphs 1-42, 43-50, 51-58, 59-66, and 67-74 as if fully set forth herein at length.

76. While Plaintiff was handling the consumer's complaints, Plaintiff noticed that many of the complaints against larger member businesses were being closed out in favor of the business, rather than the consumer, even though the information provided by the consumer indicated that it should have been closed in favor of the consumer.

77. Plaintiff reported the BBB's bias in favor larger member businesses to Betts, a co-worker in charge of closing complaints; Goodwin, the Senior Complaint Consultant; and Zak, Senior Vice President, on multiple occasions.

78. Each time Plaintiff reported the BBB's actions in regard to its favoritism toward larger member business, Plaintiff was told to just close out the complaints and discontinue her investigation.

79. In 2013, Scarpetti told Plaintiff not to investigate negative information about larger accredited businesses, such as Travelers Insurance.

80. BBB is an organization that is operated primarily for the purpose of bringing about the civic betterments and social improvements.

81. The BBB states that its mission is to ensure that high standards for trust are set and maintained. The BBB states that it exists so consumers and businesses alike have an <u>unbiased</u> source to guide them on matters of trust. The BBB states that its mission is to provide educational information and expert advice that is free of charge and easily accessible.

82. BBB states that its accreditation is an honor – and not every business is eligible. According to the BBB, businesses that meet the BBB's high standards are invited to seek BBB accreditation.

83. The Plaintiff was exercising her free speech on matters of public concern, protected by the First Amendment of the United States Constitution and Sections, 3, 4, and 14 of the Connecticut Constitution, when she spoke out about the BBB's bias in favor of larger accredited businesses, against the unbiased mission of the BBB.

84. The exercise of Plaintiff's rights did not materially interfere with her duties, nor did it interfere with her job performance or working relationship with Defendant.

85. After Plaintiff complained of the BBB's unethical conduct, she was subject to numerous forms of retaliation, including, but not limited to:

    (a). Scarpetti ignoring the mission of the BBB, directed Plaintiff to close out the complaints in regard to larger accredited businesses, such as Travelers Insurance, as resolved.

    (b). Giving the Plaintiff an Employee Review, which stated that her performance had been below expectations in an attempt to further intimidate and harass Plaintiff.

    (c). On December 11, 2013, BBB informed Plaintiff that she had until April 2014 to improve upon her alleged performance issues.

    (d). On February 3 2014, Plaintiff was required to meet with Scarpetti and Zak and was told that she only had until the end of February 2014 to improve her alleged performance issues, completely ignoring the fact that Plaintiff's previous December 2013 Employee Review, permitted her until April of 2014 to allegedly improve.

    (e). On March 7, 2014, Plaintiff was terminated, prior to the expiration of her April 2014 employee review period.

86. The BBB's acts of retaliation were the direct result of Plaintiff's speech on a matter of public concern in violation of C.G.S. 31-51q.

87. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages that include, but are not limited to: lost or reduced wages, fringe benefits, health insurance benefits, pension payments, loss of social security income and benefits, until the age of retirement; emotional and psychological distress, stress, anxiety; physical injury; and the loss of the ability to enjoy life's pleasures and activities.

88. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT SIX
### VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT
### C.G.S. 31-51M

89. Plaintiff realleges and incorporates Paragraphs 1-42, 43-50, 51-58, 59-66, 67-74, and 75-88 as if fully set forth herein at length.

90. While Plaintiff was handling the consumer's complaints, Plaintiff noticed that many of the complaints against larger member businesses were being closed out in favor of the businesses, rather than the consumer, even though the information provided by the consumer indicated that it should have been closed in favor of the consumer.

91. Plaintiff reported the BBB's bias in favor of larger member businesses to Betts, a co-worker in charge of closing complaints; Goodwin, the Senior Complaint Consultant; and Zak, Senior Vice President, on multiple occasions.

92. Each time Plaintiff reported the BBB's actions in regard to its favoritism toward larger member businesses, Plaintiff was told to just close out the complaints and discontinue her investigation.

93. In 2013, Scarpetti told Plaintiff not to investigate negative information about larger accredited businesses, such as Travelers Insurance.

94. BBB is an organization that is operated primarily for the purpose of bringing about the civic betterments and social improvements.

95. The BBB states that its mission is to ensure that high standards for trust are set and maintained. The BBB states that it exists so consumers and businesses alike have an unbiased source to guide them on matters of trust. The BBB states that its mission is to provide educational information and expert advice that is free of charge and easily accessible.

96. BBB states that its accreditation is an honor – and not every business is eligible. According to the BBB, businesses that meet the BBB's high standards are invited to seek BBB accreditation.

97. The Plaintiff was exercising her free speech on matters of public concern, protected by the First Amendment of the United States Constitution and Sections, 3, 4, and 14 of the Connecticut Constitution, when she spoke out about the BBB's bias in favor of larger accredited business, against the unbiased mission of the BBB.

98. The exercise of these rights did not materially interfere with Plaintiff's duties, nor did it interfere with her job performance or working relationship with Defendant.

99. After Plaintiff complained of the BBB's unethical conduct, she was subject to numerous forms of retaliation, including, but not limited to:

    (a). Scarpetti ignoring the mission of the BBB, directed Plaintiff to close out the complaints in regard to larger accredited businesses, such as Travelers Insurance, as resolved.

    (b). Giving the Plaintiff an Employee Review in December of 2013, which stated that her performance had allegedly been below expectations in an attempt to further intimidate and harass Plaintiff.

    (c). On December 11, 2013, BBB informed Plaintiff that she had until April 2014 to improve her alleged performance issues.

    (d). On January 15, 2014, Plaintiff was required to meet with Scarpetti and Zak and was told that she only had until the end of February 2014 to improve her alleged performance issues, completely ignoring the fact that Plaintiff's previous Employee Review, permitted her until April of 2014 to allegedly improve.

    (e). On March 7, 2014, Plaintiff was terminated, prior to the expiration of her April 2014 employee review period.

100. The BBB's acts of retaliation were the direct result of Plaintiff's speech on a matter of public concern in violation of C.G.S. 31-51m.

101. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages that include, but are not limited to: lost or reduced wages, fringe benefits, health

insurance benefits, pension payments, loss of social security income and benefits, until the age of retirement; emotional and psychological distress, stress, anxiety; physical injury; and the loss of the ability to enjoy life's pleasures and activities.

102. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct

## COUNT SEVEN
## COMMON LAW WRONGFUL DISCHARGE
## IN VIOLATION OF AN IMPORTANT PUBLIC POLICY

103. Plaintiff hereby incorporates Paragraphs 1-42, 43-50, 51-58, 59-66, 67-74, 75-88, and 89-102 as if fully set forth herein.

104. The Plaintiff was exercising her free speech on matters of public concern by reporting the unethical conduct of the BBB.

105. The exercise of these rights did not materially interfere with her job performance, nor did it interfere with her job performance or working relationship with the BBB.

106. Plaintiff was subject to numerous forms of retaliation, including, but not limited to:

   (a). Scarpetti ignoring the mission of the BBB, directed Plaintiff to close out the complaints in regard to larger accredited businesses, such as Travelers Insurance, as resolved.

   (b). Giving the Plaintiff an Employee Review in December of 2013, which stated that her performance had been below expectations in an attempt to further intimidate and harass Plaintiff.

   (c). On December 11, 2013, BBB informed Plaintiff that she had until April 2014 to improve her alleged performance issues.

   (d). On February 3, 2014, Plaintiff was required to meet with Scarpetti and Zak and was told that she only had until the end of February 2014 to improve her alleged performance issues, completely ignoring the fact that Plaintiff's previous Employee Review in December 2013, permitted her until April of 2014 to allegedly improve.

   (e). On March 7, 2014, Plaintiff was terminated, prior to the expiration of her April 2014 employee review period.

107. The acts of retaliation were the direct result of Plaintiff's speech on a matter of public concern.

108. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages that include, but are not limited to: lost or reduced wages, fringe benefits, health insurance benefits, pension payments, loss of social security income and benefits, until the age of retirement; emotional and psychological distress, stress, anxiety; physical injury; and the loss of the ability to enjoy life's pleasures and activities.

109. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT EIGHT
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

110. The Plaintiff hereby re-alleges and reincorporates Paragraphs 1-42, 43-50, 51-58, 59-66, 67-74, 75-88, 89-102, and 103-109 as if more fully set forth herein.

111. The conduct of the Defendant and its employees was extreme and outrageous.

112. The Plaintiff was told that her performance was subpar and allegedly needed to improve to intentionally harass her.

113. BBB knew or should have known of the conduct of its managers and employees.

114. BBB refused to take any steps to address, stop or prevent such conduct.

115. BBB knew that the above incorporated conduct would likely result in the severe emotional distress of the Plaintiff.

116. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages that include, but are not limited to: lost or reduced wages, fringe benefits, health insurance benefits, pension payments, loss of social security income and benefits, until the age of retirement; emotional and psychological distress, stress, anxiety; physical injury; and the loss of the ability to enjoy life's pleasures and activities.

117.    Plaintiff seeks damages as a result of the BBB's unlawful conduct.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1. Money damages;
2. Costs;
3. Punitive damages, attorney fees, and expert witness fees;
4. Pre-judgment interest
5. Trial by jury; and
6. Such other relief as the Court deems just, fair, and equitable.

                THE PLAINTIFF,
                PARIS CHANEY

        By:_____/s/_____
                Eugene Axelrod (ct00309)
                Michael C. McMinn (ct27169)
                Axelrod & Associates, LLC
                *Her Attorneys*
                8 Lunar Drive
                Woodbridge, CT 06525
                Tel: 203-389-6526
                Fax: 203-389-2656